DEBORAH POWERS ET AL., Plaintiffs in Error, v. P. S.
HILL, Assignee, Defendant in Error.

St. Louis Court of Appeals, June 7, 1887.

ASSIGNMENTS—DELINQUENT CREDITOR'S RIGHT TO SHARE IN DECLARED
DIVIDENDS.—A creditor who fails to prove his demand against an
assigned estate, on the day set therefor, may subsequently prove
his demand and participate in dividends previously declared.
(LEWIS, P. J., dissenting).

ERROR to the St. Louis Circuit Court, DANIEL DIL-
LON, Judge.

*Reversed and remanded with directions.*

MILLS & FLITCRAFT, and ENOCH JOHNSON, for the
plaintiffs in error : The intention of the framers should
be considered in the interpretation, and when such in-
tention is ascertained, it will govern the application of
the statute, even though such application be contrary to
the strict letter of the law. *Riddick v. Governor*, 1 Mo.
147 ; *The State v. Emerson*, 39 Mo. 80 ; *The People v.
Insurance Co.*, 15 Johns. 380 ; *Whitney v. Whitney*, 14
Mass. 92. This intention is to be gathered from the
occasion and necessity for the passage of any particu-
lar act, and is not to be deduced wholly from the literal
import of the words used in framing any particular sec-
tion of the act. *The People v. Insurance Co.*, 15
Johns. 380 ; Marshall, C. J., 9 Wheaton, 189 ; *Schultz
v. Railroad*, 36 Mo. 13. This statute has been con-
strued in the following cases : *Sprague Co. v. Fur-
nishing Co.*, 26 Fed. Rep. 572 ; *Williams v. Jones*, 23
Mo. App. 132.

SILAS B. JONES, for the defendant in error.

THOMPSON, J., delivered the opinion of the court.

This is a friendly suit, brought against the assignee of an insolvent corporation for the purpose of procuring from the court a direction to the assignee, whether he shall pay, upon the plaintiffs' demand, a dividend paid by him on the demands of other creditors prior to the time when the plaintiffs' demands were presented and allowed. The question arises upon a demurrer to the petition. The substantial facts stated in the petition were that, in October, 1886, the Beck & Marshall Carpet Company, a corporation, made an assignment, under the statute, to the defendant, as assignee, for the benefit of its creditors. The plaintiffs, in their own right, and as assignees of other creditors, hold claims against the assigned estate, amounting to $1,968.91. The circuit court sustained a demurrer to the petition, and the plaintiff prosecutes a writ of error in this court.

The assignee gave notice, in due form of law, that he would, on the twenty-second, twenty-third, and twenty-fourth days of November, 1886, proceed, publicly, to adjust and allow demands against the estate and effects of the assignor. The plaintiffs' demands were not presented for allowance on either of the three days appointed. On December 15, 1886, the assignee declared and paid a dividend of fifty-five per cent. on the demands which had been duly presented and allowed. Afterwards, the plaintiffs, being non-residents of the state, made a satisfactory showing, under the statute, for their failure to lay their claims before the assignee at the time appointed, and demanded that the claims be allowed and made to participate in the dividend previously declared. The assignee allowed the demands, but refused to let them share in the dividend of December 15. The propriety of this refusal is the only matter of inquiry brought to our attention.

Section 373, of the Revised Statutes, provides that "all creditors who, after being notified as aforesaid,

shall not attend at the place designated during the said term, and lay before the assignee the nature and amount of their demands, shall be precluded from any benefit of said estate ; * * * provided, that any creditor, who shall fail to lay his claim before said assignee, during said term, on account of sickness, absence from the state, or any other good cause, may, at any time before the declaration of the final dividend, file and prove up his claim, and the same may be allowed, and the remaining dividends paid thereon, as in the case of other allowed claims."

It is perceived that the ruling of the circuit court rests upon a literal reading of the statute. We are of the opinion, however, that the language of this section of the statute is to be construed in subordination to the general policy of the statute, as expressed in section 354, as amended by the act of March 7, 1885, which reads as follows : " Every voluntary assignment of lands, tenements, goods, chattels, effects, and credits, made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor in proportion to their respective claims ; and every provision in any assignment providing for the payment of one debt or liability in preference to another, shall be void, and all debts and liabilities (including judgments entered by confession thirty days previous to such assignment) shall be paid *pro rata* from the assets thereof ; and every such assignment shall be proved or acknowledged, and certified and recorded in the same manner as is prescribed by law in cases wherein real estate is conveyed." It is perceived that the primary object of the statute is to enable an insolvent debtor, by making an assignment thereunder, to place his property in the custody of a trustee, to be administered for the equal benefit of his creditors, and that the statute prohibits preferences in such deeds of assignment, and avoids confessions of judgment, which have been made within thirty days prior thereto. . The policy thus expressed is

founded in the most obvious justice. It has always been a favorite maxim of courts of equity that equality among creditors is equity. This principle has been regarded as peculiarly applicable to cases where the debtor is a corporation, and has been formulated by those courts in the familiar rule that the assets of an insolvent corporation are a trust fund for the benefit of its creditors, by which those courts are universally understood to mean for the equal benefit of its creditors. The meaning is, that creditors standing in equal right and in equal relations, must share equally. "An assignment for the benefit of creditors is a trust, and the assignee is to be regarded as a trustee." *Shockley v. Fisher*, 75 Mo. 502 ; Perry on Trusts, sect. 585. A superintendence over the administration of trusts is perhaps the largest head of equity jurisdiction. In general, trustees are subject to the control of courts of equity, and exercise their powers in conformity with the principles established by those courts. In this state, where legal and equitable remedies are blended, and are administered in the same tribunal, the rule prevails none the less, that trusts are administered in conformity with that mass of rules and principles which pass under the general designation of equity, except in cases where the trustee is subject to explicit statutory directions.

There is reason, no doubt, for the holding that an assignee for the benefit of creditors, in admitting creditors who have not proved up their claims at the proper time to a participation in the dividends, is subject to the explicit direction of the statute above quoted. Undoubtedly this is so in all cases where, to admit such creditors to dividends previously declared and paid, would have the effect of withdrawing any portion of such dividends from the creditors who have received them, or otherwise prejudicing the substantial rights of other creditors, or sensibly delaying or obstructing the

winding up of the estate. But where, as in the present case, it does not appear that any such prejudice to any other creditors, or inconveniences to the administration, will be produced by admitting the tardy creditors to a full participation in the dividends, prior and subsequent to the proving of their claims, the policy of the statute must prevail. The language above quoted ·from the statute is directory; and, within the limits above stated, the assignee must exercise his powers as a trustee in conformity with the declared purpose of the· statute, which is that of effecting a *pro rata* division of the assets of the insolvent debtor among his creditors. A strict adherence to the language of the statute, in a case like the present, would involve the inequitable result of subjecting a meritorious creditor to a forfeiture of more than half his demand, for no other reason than his delay of less than three months in proving up the same, which delay he has excused to the satisfaction of the assignee. To follow the letter of the statute, where it leads, in such circumstances, to such results, would afford a striking illustration of the maxim that "the letter killeth."

A somewhat analogous question, under the same section of the statute, was before this court in the case of the *Fourth National Bank v. Scudder* (15 Mo. App. 463.) In that case, the assignee had refused to allow a tardy creditor to prove his demand, though it was admitted to be a just and incontestable claim. The circuit court, on an appeal from his ruling, required him to audit the demand, and this court affirmed the judgment of the circuit court. In the last paragraph of the opinion, it was said: "It can not escape the attention of any one, that the grounds on which we are asked to reverse this judgment proceed in entire disregard of the merits of the claim and of the plain justice of the case. No prejudice whatever appears from the allowance of this claim. It is not even suggested that, by its allowance, the assignee will suffer any substantial inconveni-

ence in discharging his trust or in adjusting his accounts. In allowing the claim to be presented after the time fixed and advertised by the assignee, the circuit court has done no more than exercise a sound discretion, such as is exercised in setting aside judgments by default for the purpose of allowing causes to be heard upon their real merits. The exercise of such a discretion can not be made a ground of error. We are forbidden, by the legislature, to reverse the judgment of any court, unless we shall 'believe that error was committed by such court against the appellant, or plaintiff in error, materially affecting the merits of the action.' Rev. Stat., sect. 3775. No such error appears. On the contrary, it appears that what the court did was entirely proper, and that to do otherwise, after hearing the evidence which was presented, would have been the grossest injustice."

In this case, we hold, upon analogous grounds, that the assignee must, disregarding, if necessary, the strict letter of section 373, Revised Statutes, administer his trust so as to make an equal distribution of the assets among creditors, in conformity with the main purpose of the statute.

We find some analogy in the decision of the Supreme Court Commission of Ohio, in *Carpenter v. Dick* (41 Ohio St. 295). The statute of that state provides, among other things, that creditors shall present their claims to the assignee for allowance within six months after the publication of notice of his appointment. It is held that the effect of this provision is not to bar a creditor who presents his claim after the expiration of six months from participation in dividends which have been paid before that time, provided the assignee has sufficient funds in his hands to admit the tardy creditor to participation in such dividends. The creditor may come in for his equitable share of the unadministered assets, whatever that may be. The court says: "If all the assets of an estate are exhausted, in making any lawful dividend or settlement, before the presentment of a

claim which has not been offered to the assignee for approval within six months after the publication, the tardy creditor must suffer, by its non-payment. If, however, there are sufficient assets remaining, he must be paid his equitable share therein. A due consideration of what is fair requires that he should be paid in the same proportion as the more vigilant creditors. By construing the section in controversy in this way, its objects, to-wit, to expedite the settlement of insolvent estates, to protect the assignee in any lawful dividend and settlement that may be made, and to secure vigilant creditors in rights acquired thereby, will be attained, and, at the same time, equity will be done as between the creditors. In this interpretation of the statute, the Commission follows the previous decision of the Supreme Court of that state, in *Owen v. Ramsdell* (33 Ohio St. 439, 442).

It is within the recollection of one of the judges of this court, who was counsel for the assignee in the case of the assignment of C. Conrad & Company, of St. Louis, that the Bank of Commerce of St. Louis, one of the largest creditors of the assignors, failed to prove up its claim before the assignee, within the time designated for that purpose; that the bank afterwards proved up its claim, but not until after a dividend had been paid on other allowed demands. The bank, as in this case, showed good cause to the assignee for not proving up its claim at the proper time, and its claim was allowed. But, as here, the assignee declined to let the bank into a participation in the previous dividend, without the direction of the circuit court. Upon a petition to the circuit court, by the bank, to be allowed to participate in the past dividend, it was held by Judge Thayer that, as there was no laches on the part of the bank, and as the assignee had funds on hand with which to satisfy the plaintiff's claim, the prayer of the petition would be granted, and it was so ordered. It should be stated that, in that case, as in this, the assignee, under the advice of his counsel, occupied a neutral position, and

merely desired the decision of the court for his protection, but that the petition of the Bank of Commerce was strenuously resisted, on the part of the other creditors ; so that it was a decision by a judge of reputation upon the precise question now before us, in an adversary proceeding.

These views proceed upon a well-known rule in the interpretation of remedial statutes, thus expressed by Chancellor Kent : " Statutes that are remedial, and not penal, are to receive an equitable interpretation, by which the letter of the act is sometimes strained, and sometimes enlarged, so as to more effectually meet the beneficial end in view, and prevent a failure of the remedy. They are construed remedially and *ultra,* but not· *contra* to the strict letter." Kent's Com. 465.

We have proceeded on the view that the strict letter of section 373, Revised Statutes, must be made to yield to the manifest equity and the general purposes of the statutè, as expressed in section 354. At the same time, we doubt whether our conclusion is a departure from the literal meaning of the provision of section 373, when applied to a case of this kind. Where, as in this case, the assignee has reserved sufficient funds to let the tardy creditor into a participation in the dividend previously paid, we incline to think that we do not greatly strain the meaning of the words of the section by holding that it means that such a dividend is a " remaining dividend," as to him. At least, we feel clear, taking the whole statute together, that the legislature did not intend to visit so severe a punishment upon creditors who have been tardy, but who have been guilty of no laches. Nor can we understand upon what ground the other creditors are entitled to be heard in resistance of such a claim. Why should the statute so operate as substantially to take money out of the pocket of a creditor who has been tardy through misfortune or without fault, and put it into the pockets of other creditors who possess no better right to it than springs from the fact that they

proved up their claims, it may be but a single day earlier?

We accordingly reverse the judgment of the circuit court, and remand the cause, with directions to overrule the demurrer and to enter judgment for the plaintiffs, in conformity with the prayer of their petition. Rombauer, J., concurs; Lewis, P. J., dissents.

Lewis, P. J., delivered a dissenting opinion.

I can not concur in the conclusion reached by my learned brother judges, for the following reasons:

Before the enactment of the amended section, 354, the material part of that section read thus: "Every voluntary assignment of lands, tenements, goods, chattels, effects, and credits, made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims." At the same time section 373 was in force, just as it now remains. This section, after providing that the assignee shall appoint three successive days for the auditing of claims against the estate, giving due notice of time and place, proceeds thus: "And all creditors who, after being notified as aforesaid, shall not attend at the place designated during the said term, and lay before the assignee the nature and amount of their demands, shall be precluded from any benefit of said estate; * * * provided, that any creditor who shall fail to lay his claim before said assignee during said term, on account of sickness, absence from the state, or any other good cause, may, at any time, before the declaration of the final dividend, file and prove up his claim, and the same may be allowed, and the remaining dividends paid thereon, as in the case of other allowed claims."

These two sections were independent of each other, and both were capable of enforcement to the letter, without the least interference, repugnancy, or inconsistency. Section 354 regulated, in general terms, the structure of

the deed of assignment, and its beneficial application to all creditors of the assignor, without exception. Section 373 prescribed the terms upon which each individual creditor was to secure the benefits provided for, and the conditions, with a qualifying proviso, which would preclude him from such benefits. This qualifying proviso gave, in certain contingencies, to the tardy creditor, who had forfeited his primary equal footing with other creditors, a right of participation in the "remaining dividends" only, meaning, clearly, such dividends as were not yet declared. It is useless to pretend that this limitation to the "remaining dividends" could have been extended to dividends previously declared, by virtue of anything contained in section 354, as it then stood.

But it seems to be argued that the amendment of section 354, approved March 7, 1885, develops a policy of the law, which is incompatible with the limitation in section 373 to the remaining dividends, and permits an enlargement of the tardy creditor's privilege, so that he may participate in dividends previously declared. This amendment consists of the following addition to the words already quoted: "And every provision in any assignment providing for the payment of one debt or liability in preference to another, shall be void, and all debts and liabilities (including judgments entered by confession thirty days previous to such assignment) shall be paid *pro rata* from the assets thereof; * * *" The amendment is in continuation or amplification of what has just been said about the general effect of the assignment, and emphasizes, or intensifies, so to speak, the direction that *all* the creditors of the assignor shall be placed on an equal footing, by forbidding any preference of one over another, and by commanding that all the debts and liabilities shall be paid *pro rata*. It has nothing to say about the terms, conditions, and limitations imposed by section 373 on each individual creditor who would avail himself of the assignment, but leaves

them all, together with the proviso limited to certain contingencies, just where they were before the amendment was adopted. I do not see how it is possible to find in the amendment any modification or repeal, even by implication, of the conditions and limitations plainly expressed in section 373.

It may well be supposed that the legislature acted on the presumption that, generally, the assignee's payment of his first dividend would proximately exhaust the money assets realized up to that time, so that there would be nothing left of the sum divided to pay on claims subsequently allowed. Hence, the provision that the tardy creditor, upon being admitted after the first dividend, may only participate in the dividends subsequently declared. In this case, however, it is alleged that the assignee had a surplus in his hands, after payment of the first dividend on all the other claims, out of which he is able to pay the same dividend on the plaintiffs' demands, and that he is willing to make such payments, if this can be done consistently with his duty under the law. But this would impinge upon the rights of other creditors who, by their superior diligence, have acquired a claim upon this surplus for augmentation of future dividends. The facts stated can not make a difference in the meaning of the law. The statute must have but one interpretation for all cases coming within its purview. If it intends that the tardy claimant may participate in none but the later dividends, then such is the law for the plaintiffs' case, whether the assignee might be able to do something more for them, or not. There is, first, a sweeping direction that the tardy creditor, in all cases, "shall be precluded from any benefit of said estate." This direction is then qualified by a proviso which grants a special indulgence in certain contingencies. No court, in my opinion, has any power to enlarge this indulgence beyond the terms in which it is expressed.

No one will question the office of equity to mitigate or subdue the harshness of the letter, when this may be

done in consonance with the manifest policy of the law. "Equity follows the law," and often finds the law itself in its obvious policy, rather than in the letter. But I have never learned that equity can repeal a statute, or enact a substitute for one. With all deference to my learned brothers, their conclusion, in my view, repeals the provision which, in general terms, precludes the tardy creditor from any benefit of the assigned estate, while it substitutes for the limited indulgence granted him by the proviso, a bestowal of all the rights exclusively reserved for the diligent creditor. This strains the possibilities of equity beyond all reason and precedent.

I can find no analogy whatever between this case and *Carpenter v. Dick* (41 Ohio St. 295). There was no statute in Ohio that limited the tardy claimant to any particular class of dividends, when once the conditions were such that he might participate at all. Had the word "remaining" been left out of our statute, I should have no hesitation in saying that the present plaintiffs, like the Ohio claimants, would have been entitled to share in all the dividends, whether past, present, or future. Another fact is fatal to the supposed analogy. No statute exists in this state, as in Ohio, which makes the condition of assets remaining in the assignee's hands, sufficient to entitle the tardy claimant to a participation in previously-declared dividends. If the Ohio case has any bearing on the one before us, it is an authority against the conclusion reached by the learned majority of this court. It seems clear to me, that that conclusion reverses the rule laid down by Chancellor Kent: That remedial statutes, when considered in equity, "are construed remedially and *ultra*, but not *contra* to the strict letter." The conclusion is directly *contra* to the strict letter, which confines the tardy claimant to a participation in the *remaining* dividends. I think that the able judge of the circuit court construed the law rightly, and that his judgment ought to be affirmed.